# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ALPHEUS BRUTON III,

    Plaintiff

v.

WILMINGTON SAVINGS FUND SOCIETY, FSB and MTC FINANCIAL, INC.,

    Defendants

Case No.: 2:25-cv-02174-APG-BNW

**Order Granting in Part Wilmington's Motion to Dismiss**

[ECF No. 12]

Plaintiff Alpheus Bruton III owns property encumbered by a deed of trust. The beneficiary of record for the deed of trust is defendant Wilmington Savings Fund Society, FSB, as trustee for CSMC 2018-RPL6 Trust (Wilmington). Defendant MTC Financial, Inc. is the trustee under the deed of trust.[1] Wilmington, through MTC, initiated foreclosure proceedings on the property. That prompted Bruton to file this lawsuit and move to enjoin the sale. I granted Bruton's motion to preliminarily enjoin the foreclosure sale.

Wilmington now moves to dismiss each of Bruton's claims. Bruton opposes dismissal and alternatively requests leave to amend if needed. I grant in part Wilmington's motion, with leave to amend.

/ / / /

---

[1] MTC has filed a declaration of non-monetary status, asserting that it is being sued only as trustee and not for its own wrongdoing. ECF No. 13. Under Nevada Revised Statutes § 107.029, a deed of trust trustee can file a declaration under these circumstances, and any other party has 15 days to object. That deadline has expired, and no objection was filed. Consequently, MTC does not have to participate further in the case except that it is "required to respond to any discovery request as a nonparty participant and is bound by any court order relating to the deed of trust." Nev. Rev. Stat. § 107.029(5).

## I. Background

In 2007, Bruton executed a deed of trust in connection with a $267,000 loan secured by the property. ECF Nos. 1-2 at 3; 14 at 5-6.[2]  In 2020, Wilmington became the beneficiary of record under the deed of trust. ECF No. 14 at 39-40.  In 2021, MTC became the trustee. *Id.* at 43.

In 2021, MTC recorded a certificate from Nevada's foreclosure mediation program that indicated Bruton did not attend the foreclosure mediation conference, and so the "Beneficiary may proceed with the foreclosure process." *Id.* at 46.  In September 2023, a notice of default and election to sell was recorded. *Id.* at 48-54.  It is unclear why the foreclosure did not move forward at that time.

In July 2024, another notice of default and election to sell was recorded against the property. ECF Nos. 1-2 at 3; 12-2.  Attached to that notice was an affidavit of authority to exercise the power of sale. ECF No. 12-2 at 4-7.  The affidavit identified the current trustee as MTC, the current holder of the note and beneficiary as Wilmington, and the current servicer as NewRez LLC, d/b/a Shellpoint Mortgage Servicing. *Id.* at 4.

Also attached to the notice of default was a declaration of compliance with Nevada Revised Statutes (NRS) §§ 107.510(1)-(2), which require a servicer or beneficiary to contact the

---

[2] When ruling on a motion to dismiss, I may consider "documents not attached to a complaint . . . if no party questions their authenticity and the complaint relies on those documents." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).  Additionally, I "may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  Thus, I can take judicial notice of the fact that certain documents were recorded with the Clark County Recorder.  However, I "cannot take judicial notice of disputed facts contained in such public records." *Id.*  Bruton's complaint relies on the deed of trust, and he does not question its authenticity.  Bruton does not object to Wilmington's request that I consider the recorded documents when ruling on the motion to dismiss, nor does he dispute facts in those records.  The complaint's allegations are consistent with the deed of trust and the recorded documents, so I consider them when ruling on Wilmington's motion without converting it into one for summary judgment.

borrower before recording a notice of default related to a residential mortgage loan to "assess the borrower's financial situation and to explore options for the borrower to avoid a foreclosure sale." That declaration stated that the servicer "has contacted the Borrower pursuant to NRS 107.510(2) in order to assess the borrower's financial situation and explore options for the borrower to avoid a foreclosure sale. Thirty (30) days or more have passed since 'initial contact' was made pursuant to NRS 107.510(2)." *Id.* at 7. In November 2024, Bruton filed for bankruptcy, so the sale was put on hold by the automatic bankruptcy stay. ECF No. 12-3.

The complaint alleges that the "loan servicer for [Wilmington] sent [Bruton] a solicitation to apply for a loan modification in June 2025." ECF No. 1-2 at 4. The complaint does not identify the servicer by name. Bruton alleges that the servicer told him he "would qualify for a loan modification if he was able to remove a lien from the homeowner's association from the Property," so he removed the lien, and a lien release was recorded on September 5, 2025. *Id.*

Bruton's bankruptcy case was dismissed on September 4, 2025. ECF No. 12-3 at 7. On September 19, a notice of trustee's sale was recorded against the property which set the foreclosure sale date for October 24. ECF No. 1-2 at 4. Bruton alleges that "[w]hen the Trustee recorded the [notice of sale] on September 19, 2025, [he] was reassured that because he had met the requirement to remove the homeowner's association lien from the Property, the loan would be modified and no sale would move forward." *Id.*

According to the complaint, a letter dated September 30 denied his loan modification. *Id.* at 5. Bruton thereafter received a letter dated October 10 that advised him he had until October 23 to pay the full reinstatement amount. *Id.* Bruton alleges that upon receiving this letter, he contacted the loan servicer and learned about the September 30 loan modification denial. *Id.* Finally, Bruton alleges that he was "never able to speak to the person named as his single point

of contact" for the loan servicer. *Id.*  He was told that the "'team' could handle the requests," but the loan process nevertheless "improperly moved forward while his complete loan modification application was being considered, he was not properly informed of the denial of the loan modification application, and he was not properly informed of or given an opportunity to appeal the denial." *Id.*

Although the sale was originally set for October 24, on October 18, another notice of trustee's sale was recorded setting the sale date for November 22. *Id.* at 30.  On October 23, Bruton filed his complaint and a motion for a temporary restraining order (TRO) in state court. *Id.* at 2, 76.  The state court granted the TRO and set a preliminary injunction hearing, but Wilmington removed the case to this court before that hearing occurred. *Id.* at 78-79; ECF No. 1.

A few days later, Bruton moved for an ex parte emergency TRO and for a preliminary injunction in this court. ECF Nos. 8; 9.  That same day, Bruton withdrew his ex parte TRO motion because Wilmington's counsel confirmed the foreclosure sale was postponed to December 12. ECF No. 10.  Wilmington opposed the motion for a preliminary injunction and moved to dismiss. ECF Nos. 12; 18.  I held a hearing on the preliminary injunction motion on December 4 and granted it. ECF No. 23.

**II.  I grant in part Wilmington's motion to dismiss, with leave to amend.**

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (quotation omitted).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

**A.  The complaint plausibly states a claim for dual tracking in count one.**

Count one of Bruton's complaint alleges that Wilmington violated NRS § 107.530 by dual-tracking Bruton's loan, meaning that the loan servicer was considering Bruton's loan modification at the same time the trustee was proceeding with nonjudicial foreclosure proceedings.  Under NRS § 107.530,

> 1. If a borrower submits an application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage servicer . . . or the beneficiary of the deed of trust, then the mortgage servicer [or] beneficiary of the deed of trust or an authorized agent of such a person may not . . . record . . . a notice of sale pursuant to subsection 4 of NRS 107.080, or conduct a foreclosure sale until one of the following has occurred:
>
> . . .
>
> > (b) The mortgage servicer, mortgagee or beneficiary of the deed of trust makes a written determination that the borrower is not eligible for a foreclosure prevention alternative, and any appeal period pursuant to subsection 5 has expired.

Under § 107.530(2), if the borrower submits a "complete application for a foreclosure prevention alternative," then the servicer must send the borrower either an offer or denial of a foreclosure prevention alternative in writing.  If the servicer denies the application for a foreclosure prevention alternative, the written denial must state how long the borrower has to appeal the denial ("which must be not less than 30 days"), and instructions on how to appeal. *Id.* § 107.530(4).  The trustee or beneficiary "may not . . . record . . . a notice of sale pursuant to subsection 4 of NRS 107.080, or conduct a foreclosure sale until the later of . . . [t]hirty-one calendar days after the borrower is sent the written statement required by subsection 4," and if the borrower appeals the denial, 15 calendar days after the appeal is denied. *Id.* § 107.530(5).

5

Wilmington moves to dismiss this claim, arguing that Bruton did not allege that he submitted a loan modification to Wilmington and did not identify the servicer with whom he communicated.  Bruton responds that he has plausibly alleged dual tracking because he alleges that the notice of sale was recorded while his loan modification application was still pending.

Bruton has plausibly alleged this claim.  Bruton alleges that the "loan servicer for the Lender" sent him a "solicitation to apply for a loan modification in June 2025," and that he completed an application with Wilmington's servicer. ECF No. 1-2 at 4.  Bruton's failure to identify the servicer by name does not render his allegations implausible.  Nor does the complaint fail to give Wilmington fair notice.  Wilmington knows who its own servicer is and identified its servicer in its affidavit of authority attached to the July 2024 notice of default.  The complaint references the July 2024 notice of default, so it is reasonable to infer that the servicer he applied to is the servicer identified in the affidavit of authority.  Finally, he alleges that the notice of sale was recorded before the loan modification application was denied, so he has plausibly alleged dual tracking.  Consequently, I deny Wilmington's motion to dismiss this claim.

**B.  Bruton has not plausibly alleged a violation of NRS § 107.530(3), but he has plausibly alleged that Wilmington violated NRS § 107.530(4) in count two.**

Count two alleges that Wilmington violated NRS §§ 107.530(3)-(4) because it did not provide Bruton with a written denial and notice of appeal rights within the statutorily required timeframe.  Wilmington repeats its arguments from count one, asserting that Bruton does not allege he submitted a loan modification to Wilmington and does not identify the servicer.  Wilmington also argues that Bruton does not allege that Wilmington or the servicer sent him a

6

loan modification denial.  Bruton responds that the September 19 notice of sale set a foreclosure sale date less than 31 days after the denial, so that is a statutory violation.

Bruton has not plausibly alleged a claim under NRS § 107.530(3) because that section does not apply.  Section 107.530(3) addresses what happens when a borrower accepts an offer of a foreclosure prevention alternative.  According to the complaint, the loan servicer did not offer a modification, so Bruton could not accept one.  I therefore grant Wilmington's motion to dismiss Bruton's allegation that it violated NRS § 107.530(3).  If Bruton meant to refer to § 107.530(2), I grant him leave to amend to state that claim.

Bruton has plausibly alleged that Wilmington violated NRS § 107.530(4).  That subsection provides that if the servicer denies the application for a loan prevention alternative, then the servicer must send the borrower a written statement of the reasons for the denial, the "amount of time the borrower has to request an appeal of the denial, which must be not less than 30 days," and instructions on how to appeal the denial, "including without limitation, how to provide evidence that the denial was in error."  The complaint alleges that the September 19 notice of sale set a sale date less than 30 days after the loan servicer sent him the written statement of the reasons for the denial, and thus deprived him of the minimum 30 days to appeal. Although Bruton implies that he never received the September 30 denial, he alleges the servicer told him about it when he contacted the servicer after receiving the October 10 letter.  As with Bruton's first claim, this claim is not implausible merely because he did not identify the loan servicer by name.  I therefore deny Wilmington's motion as to this claim.

Because I grant Bruton leave to amend with respect to some of his other claims, he may take this opportunity to add factual allegations related to this claim that were further developed in the injunction briefing regarding the servicer's denial letter not stating that Bruton had a right

7

to appeal, how much time he had to appeal, or how to do so.  As it stands, the complaint states in rather conclusory fashion that Bruton was "not properly informed of or given an opportunity to appeal the denial." ECF No. 1-2 at 5.

**C.  I deny Wilmington's motion to dismiss Bruton's single point of contact claim in count three, but I grant Bruton leave to amend this claim because it may be invalid for reasons not proffered by Wilmington.**

Count three alleges that Wilmington violated NRS § 107.540 because although Wilmington's servicer identified a single point of contact, Bruton was never able to speak to that person and instead was told a team would handle his requests.  He alleges he was harmed because the foreclosure process moved ahead while the modification was being considered, he was not properly informed of the modification denial, and he was not properly informed of or given an opportunity to appeal.  Wilmington again argues that Bruton does not allege that he requested a foreclosure prevention alternative, does not identify the servicer with whom he spoke, and does not identify the person who was his alleged single point of contact.  Bruton responds that he was never able to speak to the person identified as the single point of contact and, despite being told the team would handle things, "his experience was negatively impacted by the lack of a true single point of contact." ECF No. 21 at 6.

NRS § 107.540(1) states that "[i]f a borrower requests a foreclosure prevention alternative, the mortgage servicer must promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact."  A single point of contact "means a natural person or a team of personnel each of whom has the ability and authority to perform the responsibilities described in this section." NRS § 107.540(6).

As with Bruton's other claims, his failure to identify the servicer or its single point of contact by name is not fatal to his claim. However, the statute's plain language allows for a team to function as the single point of contact, and Bruton has not alleged that he was unable to contact anyone on the team. Thus, it appears that Bruton will be unable to sustain this claim. But because Wilmington did not raise this argument, I do not dismiss this claim at this time. Because I grant Bruton leave to amend some of his other claims, I also grant him leave to amend this claim if he has facts to do so.

**D. I dismiss Bruton's claim in count four that Wilmington violated NRS § 107.550, with leave to amend.**

Count four alleges that Wilmington violated NRS § 107.550 because the notice of sale must be recorded within nine months after the notice of default, which did not happen here. Bruton alleges that Wilmington therefore must start the nonjudicial foreclosure process anew by filing a new notice of default. Wilmington argues that because Bruton filed for bankruptcy, the 9-month period those proceedings were ongoing is tolled. Bruton responds that the complaint does not concede the bankruptcy case was active throughout the relevant period and he asserts that § 107.550 is not tolled unless the automatic stay is in place. He contends that cannot be determined solely by looking at the bankruptcy court's docket, so this matter is not suitable for resolution at dismissal.

Under NRS § 107.550(1)(b), "any notice of default and election to sell recorded pursuant to subsection 2 of NRS 107.080 or any notice of sale recorded pursuant to subsection 4 of NRS 107.080 must be rescinded, and any pending foreclosure sale must be cancelled, if . . . [a] notice of sale is not recorded within 9 months after the notice of default and election to sell is recorded . . . ." However, the "periods specified in paragraph[] (b) . . . of subsection 1 [is] tolled" if "a

borrower has filed a case under 11 U.S.C. Chapter 7, 11, 12 or 13, until the bankruptcy court enters an order closing or dismissing the bankruptcy case or granting relief from a stay of foreclosure or trustee's sale." NRS § 107.550(2)(a).

The notice of default was recorded July 12, 2024. ECF No. 18-2 at 2. Bruton filed for bankruptcy on November 20, 2024, which stopped the clock. ECF No. 18-3 at 2. At that point, only about four months had passed. Bruton's bankruptcy was dismissed on September 4, 2025. *Id.* at 7. The period the bankruptcy proceeding was ongoing is tolled under the statute unless Wilmington was granted relief from the automatic bankruptcy stay. Although Bruton contends the automatic stay might have been lifted, he points to nothing on the bankruptcy court's docket to suggest that it was, nor does he provide an order from the bankruptcy court lifting the stay. A review of the bankruptcy court's docket shows no motion to lift the stay was filed and no order lifting the stay was entered. *See In re Alpheus C. Bruton, III*, No. 24-16092-abl (D. Nev. Bankr.).[3] So, by the time Bruton filed his complaint in this case, Wilmington's time to conduct the sale had not run out. I therefore grant Wilmington's motion to dismiss this claim, with leave to amend if facts exist to do so.

**E.  I dismiss Bruton's wrongful foreclosure claim in count five without prejudice.**

Count five alleges that "[t]o the extent the foreclosure sale were to move forward [as] currently scheduled, it would be wrongful" because it was initiated without complying with the statutory requirements. Wilmington argues that I should dismiss this claim because no foreclosure sale has occurred. Bruton responds that he seeks injunctive relief under NRS § 107.560, which expressly permits him to sue to enjoin a sale. He argues that the wrongful

---

[3] I may take judicial notice of the bankruptcy court's docket. *Harris*, 682 F.3d at 1132.

foreclosure claim is pleaded in the alternative to his other claims because any sale conducted in violation of the statutory provisions would be wrongful.

To state a wrongful foreclosure claim, a plaintiff must allege "that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983). "The elements of a claim for wrongful foreclosure are: (1) that a foreclosure sale occurred; and (2) the [debtor] was not in default." *Bank of N.Y. Mellon v. Log Cabin Manor Homeowners Ass'n*, 362 F. Supp. 3d 930, 939 (D. Nev. 2019) (quotation omitted).

Bruton does not allege a foreclosure sale has taken place, and I enjoined the sale. Thus, Bruton has not plausibly alleged a wrongful foreclosure claim. He can seek to enjoin a foreclosure sale under NRS § 107.560,[4] which he has asserted with respect to his other claims. I therefore grant Wilmington's motion to dismiss this claim without prejudice to Bruton pursuing a wrongful foreclosure claim should a foreclosure sale eventually occur.

**F.  Bruton has plausibly alleged a breach of the covenant of good faith and fair dealing in count six.**

Count six alleges that Wilmington breached the implied covenant of good faith and fair dealing because its servicer promised Bruton a modification upon him clearing the homeowner's association lien but then denied the modification and initiated foreclosure. Wilmington argues that Bruton does not identify a contract between himself and Wilmington, and that he fails to allege Wilmington owed him a duty, how Wilmington breached that duty, how Bruton justifiably

---

[4] Section 107.560(1) provides that "[i]f a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of NRS 107.400 to 107.560, inclusive."

11

relied, or how he suffered damages.  Bruton responds that the "promissory note and deed of trust are contracts that necessarily incorporate good-faith modification review under Nevada statutes," and Wilmington's "misleading promises and dual-tracking breach that duty." ECF No. 21 at 7.

Under Nevada law, "an implied covenant of good faith and fair dealing exists in all contracts." *A.C. Shaw Const., Inc. v. Washoe Cnty.*, 784 P.2d 9, 10 (Nev. 1989) (simplified). "Where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991).  Alternatively phrased, "[w]hen one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Id.* at 923.  Whether the alleged breaching party's "actions fall outside the reasonable expectations of the [other] party is determined by the various factors and special circumstances that shape these expectations." *Id.* at 924. Whether a party acted in good faith is a question of fact. *A.C. Shaw Const., Inc.*, 784 P.2d at 11.

Bruton alleges that he and Wilmington are parties to the deed of trust, which is subject to Nevada law governing residential mortgages, foreclosures, and foreclosure prevention alternatives.  He alleges that Wilmington's servicer told him that if he paid off the homeowner's association lien, then he would qualify for a loan modification.  He did so, but then the modification was denied, and the trustee commenced the foreclosure process.  Inducing a borrower to pay off a lien by representing that he would qualify for a modification and then denying the modification and pursuing foreclosure plausibly alleges a breach of the covenant of good faith and fair dealing.  So, I deny Wilmington's motion to dismiss this claim.

**G. I deny Wilmington's motion to dismiss Bruton's requests for declaratory and injunctive relief.**

Count seven seeks an injunction under NRS § 107.560 to halt the foreclosure sale and a declaration "deeming any foreclosure invalid absent statutory compliance." ECF No. 1-2 at 9. Wilmington argues that declaratory and injunctive relief are remedies, not claims, and because all other claims fail, so should these requested forms of relief.  Bruton responds that his requests are based on NRS § 107.560, which expressly authorizes him to seek injunctive relief.  He also argues that even if these remedies should not be listed as separate claims, I should treat them as requests for relief and not dismiss them.

I deny Wilmington's motion to dismiss because Bruton is entitled to sue for injunctive relief under NRS § 107.560 even if he should not have requested injunctive relief as a standalone claim.  Additionally, all his other claims do not fail, and he may seek declarations about the parties' respective rights.

**H. I grant Wilmington's motion to dismiss Bruton's claims for statutory damages and attorney's fees, with leave to amend.**

Wilmington argues that Bruton cannot get damages and attorney's fees for any of his statutory claims unless there is a completed trustee's sale.  Bruton does not respond to this argument.  Consequently, he consents to me granting this portion of Wilmington's motion. LR 7-2(d).  However, I grant him leave to amend.

**III. Conclusion**

I THEREFORE ORDER that defendant Wilmington Savings Fund Society, FSB's motion to dismiss **(ECF No. 12) is GRANTED in part**.

13

I FURTHER ORDER that plaintiff Alpheus Bruton III may file an amended complaint by May 15, 2026.  If Bruton does not file an amended complaint by that date, the case will proceed on Bruton's claims for (1) dual tracking in count one; (2) violation of NRS § 107.530(4) in count two; (3) violation of NRS § 107.540 in count three; (4) breach of the covenant of good faith and fair dealing in count six; and (5) Bruton's requests for injunctive and declaratory relief.

DATED this 14th day of April, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

14